**WACHTELL, LIPTON, ROSEN & KATZ, David M. Einhorn, Tax Matters Partner, Petitioner–Appellee,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent– Appellant.**

**No. 610, Docket 93–4108.**

United States Court of Appeals, Second Circuit.

Argued Nov. 18, 1993.

Decided June 6, 1994.

---

Thomas J. Clark, Washington, DC (Michael L. Paup, Acting Asst. Atty. Gen., Gary R. Allen, Kenneth L. Greene, Attys., Tax Div., Dept. of Justice, of counsel), for respondent-appellant.

Richard K. Willard, Washington, DC (Sara E. Hauptfuehrer, Steptoe & Johnson, Washington, DC, David M. Einhorn, Warren R. Stern, Wachtell, Lipton, Rosen & Katz, New York City, of counsel), for petitioner-appellee.

David R. Levin, Reish & Luftman, Washington, DC, for amicus curiae American Soc. of Pension Actuaries.

Before: LUMBARD, PIERCE and MINER, Circuit Judges.

PIERCE, Circuit Judge:

The Commissioner of Internal Revenue (the "Commissioner") appeals from a decision of the United States Tax Court (Clapp, *Judge*), which redetermined the allowability of a portion of certain tax deductions taken by the partners of petitioner-appellee Wachtell, Lipton, Rosen & Katz for pension plan contributions made in 1986. In a memorandum opinion filed July 14, 1992, the Tax Court held that the actuarial assumptions used to calculate the subject contributions were reasonable in the aggregate under Internal Revenue Code ("I.R.C." or "Tax Code") § 412(c)(3) and represented the actuary's best estimate of anticipated plan experience. *Wachtell, Lipton, Rosen & Katz v. Commissioner*, 64 T.C.M. (CCH) 128, 152, 1992 WL 162645 (1992). We agree and affirm the decision of the Tax Court.

## BACKGROUND

In 1984, Wachtell, Lipton, Rosen & Katz ("Wachtell"), a New York law firm, adopted a retirement plan for the members of its partnership. Each of the forty-one partners was covered by an individual defined benefit plan ("IDB plan"), with that partner as the sole participant. The partnership made contributions to the IDB plans on behalf of each partner and the plans were self-directed in that each partner was a co-trustee of his or her own plan and made decisions concerning the investment of plan assets. Prior to Congress' amending the Tax Code in 1986, Wachtell's IDB plans were considered to be qualified plans. *See* 26 U.S.C. § 401(a) (1982). As qualified plans, the IDB plans were tax exempt, *see id.* § 501(a), and contributions to the plans which met all applicable requirements were tax deductible, *see id.* § 404(a). In 1986, Congress amended the Tax Code to require that a qualified plan cover at least fifty employees or forty percent of the employer's work force. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, § 1112(b), 1986 U.S.C.C.A.N. (100 Stat.) 2085, 2444 (codified at 26 U.S.C. § 401(a)(26) (1988)). The amendment eliminated qualified plan status for IDB plans effective January 1, 1989, and the Wachtell plans were all terminated as of December 1, 1988. The current dispute involves income tax deductions that were passed through to the Wachtell partners for contributions made to the IDB plans for taxable year 1986.

Because defined benefit plans promise a specific benefit that is to be paid at some time in the future, there are a number of uncertainties connected with their funding. The amount that must be contributed currently to insure that a plan is eventually able to pay the promised benefit depends on several factors including (1) the rate of return on the investment of plan assets over the life of the plan; (2) the date that the payment of benefits will commence; (3) administrative expenses that the plan will incur; and (4) the period of time during which benefits will be paid. Plan sponsors are required to engage

the services of an enrolled actuary [1] to make assumptions about the various factors. *See* 26 U.S.C. § 6059(b) (1988). The actuary then uses these assumptions to calculate the level of contributions to be made to the plan each year.

The Tax Code imposes minimum funding standards on qualified pension plans, *see* 26 U.S.C. § 412 (1988), but allows an employer to deduct from its gross income the contributions that are required to be made to meet the funding standards, *see id.* § 404(a)(1)(A). At the time Wachtell made the contributions that are at issue here, the Tax Code required, as a prerequisite for deductibility, that the calculation of the minimum funding contribution

> be determined on the basis of actuarial assumptions and methods which, in the aggregate, are reasonable (taking into account the experience of the plan and reasonable expectations) and which, in combination, offer the actuary's best estimate of anticipated experience under the plan.

26 U.S.C. § 412(c)(3) (1982); *see also id.* § 404(a)(1)(A) ("In determining the amount deductible[,] . . . the funding method and the actuarial assumptions used shall be those used . . . under section 412. . . .").

For the 1986 taxable year, Wachtell engaged the services of an enrolled actuary to help determine its pension plan liabilities. The partnership then made the contributions required to meet those liabilities and deducted what it determined to be the allowable portion—a total of $7,062,204—on its partnership tax return. The portion of the deduction relating to the IDB plans was $5,832,204.[2] On April 16, 1990, the Internal Revenue Service ("IRS") issued a notice of final partnership administrative adjustment, pursuant to I.R.C. § 6223(a)(2), which disallowed the entire deduction for 1986. Then, on July 2, 1990, Wachtell filed a petition in the United States Tax Court for readjustment of partnership items under I.R.C.

§ 6226(a)(1), seeking a determination that the deductions it had claimed were valid. The matter was tried before the Tax Court in a nine-day trial which commenced on January 6, 1992. At trial, the Commissioner argued that the assumptions used by the plans' actuary to determine contributions and deductions were not reasonable in the aggregate and did not represent the actuary's best estimate of anticipated plan experience. Substituting what the Commissioner asserts were reasonable assumptions, the IDB plans, it was argued, were over-funded and no contributions should have been made nor any deductions allowed for 1986. Wachtell contested the Commissioner's assertions and argued that the challenged actuarial assumptions were reasonable. The court also heard considerable expert testimony concerning the role of actuaries in pension plan funding decisions. On July 14, 1992, the Tax Court issued an opinion in which it thoroughly analyzed the parties' various contentions and concluded that "each of the challenged assumptions was reasonable, and the actuarial assumptions and methods used by Wachtell Lipton were reasonable in the aggregate." *Wachtell,* 64 T.C.M. at 152. The court also found that the assumptions offered the actuary's best estimate of anticipated experience under the plans and that no retroactive changes of assumptions were warranted since the assumptions were not substantially unreasonable. *Id.* The Tax Court's final decision was entered February 16, 1993, wherein it determined that the allowable deduction for 1986 was $6,873,952. The Commissioner filed a timely notice of appeal.

## DISCUSSION

■ On appeal, the Commissioner asserts that the actuarial assumptions used by Wachtell in 1986 to calculate contributions to the IDB plans were not reasonable in the aggregate and did not represent the actuary's best estimate of anticipated plan experience. We

---

**1.** Actuaries are enrolled by the Joint Board for the Enrollment of Actuaries, which was created by the Employee Retirement Income Security Act ("ERISA") to set standards and qualifications for persons performing actuarial services for ERISA-covered plans. *See* 26 U.S.C. § 7701(a)(35) (1988).

**2.** A total of $1,230,000 also was contributed by the partnership in 1986 to a defined contribution plan on behalf of other Wachtell employees.

do not understand the Commissioner to contend that the factual findings of the Tax Court were clearly erroneous. *See Commissioner v. Duberstein,* 363 U.S. 278, 291, 80 S.Ct. 1190, 1199–1200, 4 L.Ed.2d 1218 (1960) (factual findings of the Tax Court must stand unless clearly erroneous); *Bausch & Lomb Inc. v. Commissioner,* 933 F.2d 1084, 1088 (2d Cir.1991) (same) (citations omitted). Rather, the Commissioner contends that the Tax Court's interpretation of I.R.C. § 412(c) was erroneous as a matter of law. Thus, she argues, the factual findings are "robbed of all vitality," requiring a remand "for reconsideration of the evidence in light of the correct legal standards." Wachtell, in contrast, argues that the Tax Court's decision was not based on an erroneous interpretation of the law and that the court applied the plain language of the statute in making factual findings which were not clearly erroneous. Appellate review of the Tax Court's legal conclusions is plenary. *Bausch & Lomb,* 933 F.2d at 1088.

The Commissioner challenges the Tax Court's construction of § 412(c) on three principal grounds. First, she argues that the Tax Court placed undue emphasis on the goal of ensuring adequate funding of pension plans and impermissibly ignored other congressional concerns expressed in the legislative history of ERISA. Next, the Commissioner argues that this undue focus on adequate funding led the Tax Court to approve the principle of actuarial conservatism, which, she charges, was improper and violated the "best estimate" requirement of § 412(c)(3). She contends that the Tax Court again misconstrued the "best estimate" requirement when it approved the use of virtually identical assumptions for all forty-one plans. Further, the Commissioner challenges the Tax Court's use of a "substantially unreasonable" test to determine whether assumptions should be changed retroactively. *Id.* We find the Commissioner's arguments unpersuasive.

■ The Tax Court began its analysis by noting that two of the primary purposes of ERISA are to "assure equitable and fair administration of pension plans and to remedy problems ... which prevented many of those plans from achieving their full potential as a source for retirement income." *Wachtell,* 64 T.C.M. at 131. Contrary to appellant's claim that "the Tax Court completely ignored the fact that ERISA grew out of multiple congressional concerns," the court quoted a section of the legislative history of ERISA which noted that one objective was " 'to make the tax laws relating to [qualified retirement plans] fairer by providing greater equality of treatment under such plans for the different taxpay[ing] groups [involved].' " *Wachtell,* 64 T.C.M. at 131 (quoting H.R.Rep. No. 807, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4670, 4671). Nonetheless, the Commissioner asserts that the court "failed completely to consider that Congress was also concerned (in § 404) with placing a ceiling on tax deductible contributions by highly paid individuals." We disagree with the Commissioner's conclusion and we believe that the court implicitly paid due regard to this concern. We note that it expressly observed that "Congress did not permit actuaries unfettered liberty," for "[t]o do so might invite the unprofessional selling of expertise to achieve tax-desired results." *Wachtell,* 64 T.C.M. at 133. We see no evidence that the court was unaware of or chose to ignore the variety of important statutory objectives of ERISA.

■ The Commissioner's challenge to the Tax Court's interpretation of the "best estimate" requirement of § 412(c) is similarly unpersuasive. That challenge is based primarily on the Commissioner's disagreement with the court's recognition of the principle of actuarial conservatism and on the court's holding that it was permissible to use almost identical assumptions for all forty-one IDB plans.

The Commissioner argues that the court's apparent approval of the basic tenet of actuarial conservatism "robbed [its fact-finding] of all vitality," since, "if the actuary is factoring in a discount for conservatism, then his discounted assumption is not in compliance with the statute." As the Tax Court correctly pointed out, however, Congress, in enacting ERISA, was aware of the important role that actuaries would play in plan-funding decisions. *Wachtell,* 64 T.C.M. at 131; *see also*

S.Rep. No. 383, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4890, 4908 ("[T]he actuarial assumptions made by actuaries in estimating future pension costs are crucial to the application of minimum funding standards for pension plans."). Moreover, several of the experts who testified at trial, including one of the Commissioner's own experts, agreed that "an element of conservatism is appropriate in the selection of actuarial assumptions." *Wachtell*, 64 T.C.M. at 141.

We agree with the Commissioner that factoring in a discount for conservatism after an actuary has arrived at his or her best estimate of anticipated experience would be contrary to the statutory mandate, but we do not believe that the Tax Court either endorsed this practice or found that the assumptions herein were improperly discounted. Our understanding is that the court merely determined that, generally, § 412(c) is not violated when an actuary chooses an assumption that is within the range of reasonable assumptions, even when the assumption is at the conservative end of that range, provided the chosen assumption is the actuary's best estimate of anticipated plan experience. *Id.* at 152. In our view, this determination was not erroneous as a matter of law.

■ The Commissioner also contends that the challenged assumptions could not have represented the actuary's best estimate of anticipated experience under the plans because the actuary did not adequately take into account differences between individual partners—e.g., possible variations in retirement age and differing investment strategies. We note first that the assumptions used were not identical for all the plans, although they were substantially similar. The similarity is not surprising, however, considering the plans were all established at the same time and had almost identical terms.

The Commissioner argues, *inter alia*, that using the same interest rate assumption for plans with different investment strategies does not pass muster under the "best estimate" test. She contends that in determining the interest rate assumption, Wachtell should have relied more on the first two years of experience under the plans rather than on long term statistical averages. We

disagree. Actual experience is, of course, an important factor to consider. However, several of the actuarial experts who testified herein agreed that, in the early years of a plan, it is generally not given much weight. *See Wachtell*, 64 T.C.M. at 141. Moreover, the IRS has previously recognized that interest rate assumptions need not be immediately revised in response to actual investment returns "unless there has been a consistent pattern of substantial gains over a period of years from sources which would be likely to recur in the future." Rev.Rul. 63–11, 1963–1 C.B. 94.

■ We believe that the "best estimate" requirement is basically procedural in nature and is principally designed to insure that the chosen assumptions actually represent the actuary's own judgment rather than the dictates of plan administrators or sponsors. *See Vinson & Elkins v. Commissioner*, 7 F.3d 1235, 1238 (5th Cir.1993). We perceive no basis for overturning the conclusion that the actuarial assumptions used by Wachtell were the actuary's best estimate of anticipated plan experience.

■ Finally, the Commissioner challenges the Tax Court's use of a "substantially unreasonable" test to determine whether retroactive adjustments to the actuarial assumptions were necessary. The court held that even where actuarial assumptions are determined to be unreasonable, they will not be changed retroactively (as opposed to prospectively) unless they are found to be substantially unreasonable. *Wachtell*, 64 T.C.M. at 134. We agree with the Commissioner that the Tax Court erred in extracting from the legislative history of the statute a test that was not included in the statute's text. *See generally Tennessee Valley Auth. v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296–97 n. 29, 57 L.Ed.2d 117 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning.") (citation omitted). Nevertheless, we do not believe that this error renders infirm all of the court's factual findings. The court found that each individual assumption was reasonable and that the assumptions were reason-

able in the aggregate. *Id.* at 152. Only then did it also conclude that the assumptions should not be changed retroactively since they were not substantially unreasonable. *Id.* That alternative holding did not adversely affect the ultimate outcome of the case. *See Financial Insts. Retirement Fund v. Office of Thrift Supervision,* 964 F.2d 142, 149 (2d Cir.1992) (rejecting one of the district court's holdings but affirming the decision based on an alternative holding); *see also Belloff v. Commissioner,* 996 F.2d 607, 617 (2d Cir.1993) (affirming the Tax Court's decision although disagreeing with aspects of its opinion).

We conclude that the Tax Court neither misconstrued nor misapplied I.R.C. § 412(c)(3), and the Commissioner has presented no basis that would indicate to us that its factual findings were clearly erroneous. We have considered all of the Commissioner's additional arguments and find them to be without merit.

## CONCLUSION

The decision of the Tax Court is affirmed.