*Decision will be entered under Rule 155.*

LEONARD R. RUBIN AND ROSALIE S. RUBIN, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21028–92.　　　Filed August 15, 1994.

*Zachary S. Minion,* for petitioners.
*Caroline Ades-Pierri,* for respondent.

OPINION

WELLS, *Judge:* For taxable year 1988, respondent determined a deficiency in petitioners' Federal income tax in the amount of $12,194.09. The issues for decision arise out of the contribution by Resource Systems, Inc. (the corporation), to its pension plan. We must decide how much of the contribution the corporation may deduct. In reaching that decision, we must decide the following specific issues: (1) Whether the corporation's reliance on uncertified, preliminary information supplied to it by its actuaries satisfies the requirements of sections 412(c)(3) and 6059,[1] and the regulatory requirements thereunder; (2) whether the corporation is entitled to file an amended Schedule B that contains revised actuarial assumptions for the pension plan for the year in issue; and (3) whether, in valuing the assets of the plan, the actuaries' failure to provide a justification for using different interest rate assumptions than they had used in prior plan years precludes respondent from accepting those actuarial assumptions as reasonable pursuant to section 1.404(a)–3(c), Income Tax Regs. The instant case was submitted without trial on the parties' stipulations of fact and exhibits attached thereto. The parties' stipulations are incorporated herein and, accordingly, are found for the purpose of the instant case.

*Background*

Petitioners resided in Short Hills, New Jersey, at the time they filed the petition in the instant case. Petitioners own all the outstanding shares of the capital stock of the corporation, which is an S corporation. The corporation timely filed its Federal income tax return, Form 1120S, for its taxable year ended June 30, 1988, on September 15, 1988. The corporation made the following timely contributions to the trust forming a part of the Resource Systems, Inc. Employees Pension Plan (the plan) for the plan's year ended June 30, 1988: On September 29, 1987, the corporation contributed $20,000 to the plan, and on September 9, 1988, the corporation contributed another $36,773 to the plan. The corporation claimed a $56,733 deduction for its contributions to the plan

---

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

on its Federal income tax return, Form 1120S, for its taxable year ended June 30, 1988. The corporation's deduction for its contributions to the plan resulted in a loss for its taxable year ended June 30, 1988, in the amount of $2,086, which petitioners deducted on their 1988 Federal income tax return, Form 1040.

The corporation engaged Pension Actuarial Associates, Inc. (the actuaries), to value the plan's assets for its plan year ended June 30, 1988. The actuarial valuation report attached to the actuaries' letter to the corporation, dated September 7, 1988, states that the corporation's maximum deductible contribution to the plan was $58,688, and that the minimum contribution that the corporation was required to make to the plan was $56,733. The actuarial report also states that the actuaries used a 6-percent interest rate assumption to value the plan's assets.

The actuaries, in a letter dated October 5, 1988, informed the corporation that its minimum required and maximum deductible contribution to the plan for its year ended June 30, 1988, were $60,524 and $62,419, respectively. The actuarial valuation attached to the actuaries' letter, dated October 5, 1988, states that the actuaries used a 6-percent interest rate assumption to value the plan's assets.

During January 1989, the corporation timely filed a Form 5558, Application for Extension of Time to File Certain Employee Plan Returns, on behalf of the plan, requesting an extension to file Form 5500–R, Registration Statement of Employment Benefit Plan, and related schedules. The extension was granted and gave the corporation until April 15, 1989, to file Form 5500–R. The actuaries, by letter dated February 15, 1989, notified the corporation that

The Form 5500's for Resource Systems, Inc. Employee's Pension Plan are due to be filed with the Internal Revenue Service no later than April 15, 1989. The contributions must be made by March 15, 1989. Please indicate the dates and the amounts of contributions made for the June 30, 1988 Plan Year End on a copy of this letter. The minimum required contribution for the said Plan Year was $60,524.

By letter dated April 11, 1989, the actuaries informed the corporation that it had revised its valuation of the plan's assets for its year ended June 30, 1988. The letter, in pertinent part, states:

Based on the data contained in our files and on our understanding of your retirement plan, we have revised the valuation for the plan year ended June 30, 1988. This valuation may be used to justify the company's contribution to the plan.

The minimum required and maximum deductible contributions are $19,821. Our records indicate that a contribution of $20,000 has already been made.

All other information on the report mailed under cover of my letter dated October 5, 1988 remains unchanged.

On April 11, 1989, an enrolled actuary employed by the actuaries certified the Schedule B that was attached to the Form 5500–R filed for the plan's year ended June 30, 1988. The Schedule B states that the corporation contributed $20,000 to the plan during its year ended June 30, 1988. The actuaries attached a statement to the Schedule B which, in part, states:

Changes in Actuarial Assumptions and Cost Method:

Yes. The pre-retirement interest assumption was changed to 8%, and the post retirement interest assumption was changed to 8.25%.

The actuaries, when valuing the plan's assets for prior years, had used a 6-percent interest rate assumption.

On April 12, 1989, petitioners, acting in their capacity as officers of the corporation, signed Form 5500–R. On April 15, 1989, the corporation filed Form 5500–R and Schedule B. On April 19, 1989, the actuaries received a copy of the Form 5500–R that the corporation filed on April 15, 1989. Respondent accepts, as reasonable, the 8-percent preretirement interest rate assumption and the 8.25-percent postretirement interest rate assumption reported on the Schedule B for the plan's year ended June 30, 1988.

In a letter dated June 22, 1989, the actuaries requested that the corporation complete a "census request" so that the actuaries could value the plan's assets for its year ended June 30, 1989. The census request states that the corporation contributed $36,773 to the plan during its plan year ended June 30, 1988. The census request was signed by Samuel J. Sirota, an attorney and a certified public accountant, on September 15, 1989.

On September 15, 1989, the corporation timely filed its Federal income tax return, Form 1120S, for its taxable year ended June 30, 1989. The corporation did not claim a deduc-

tion for the contributions, if any, it made to the plan during the corporation's taxable year ended June 30, 1989. In a letter dated October 16, 1989, the actuaries informed the corporation that

In reviewing the census data and financial information received for the plan year [ended] June 30, 1989, we have noticed that the Pension Contribution for the plan year [ended] June 30, 1988, was in excess of the maximum deductible contribution of $19,821 (report of April 11, 1989).

On October 18, 1989, the actuaries prepared a Form 5500–R and Schedule B for the plan's year ended June 30, 1989. The Schedule B states that the corporation contributed $36,773 to the plan during its plan year ended June 30, 1989. The Schedule B also states that the actuaries used a preretirement interest rate assumption of 8 percent and a postretirement interest rate assumption of 8.25 percent to value the plan's assets. Petitioners signed Form 5500–R on January 29, 1990, and filed it shortly thereafter.

In a letter dated January 11, 1990, Mr. Sirota asked the actuaries for information concerning their valuation of the plan's assets for its year ended June 30, 1988. The letter, in pertinent part, states:

I am writing you in follow-up of our telephone conference concerning the I.R.S. audit of Resource Systems, Inc. and the recent conversations that both your firm and I have had with R. A. Robert Geddes.

Mr. Geddes is questioning the income tax deduction by the corporation for the year ended June 30, 1988 in the amount of $56,773.00 because your firm filed a form 5500–C and only claimed a payment of $20,000.00, not $36,773.00. The total contribution for the year ended June 30, 1988 was $56,773.00 and was based upon telephone advice that I received on September 7, 1988 from Anisha who I told that the full contribution would be made, which is the reason that I asked her for the total amount. I sent her a speed letter on September 1, 1988 (photocopy enclosed). I was also advised that the maximum contribution could be $58,668.00. Certainly you should be able to re-calculate from the maximum contribution of $58,668.00 a slightly lower amount which should approach $56,773.00 in view of the lower assets of approximately $11,000.00 which the agent suggests. In any event you should have calculations in your file to support the amount given to me by Anisha by telephone which was the basis for my clients deduction and contribution.

On January 18, 1990, the actuaries responded to Mr. Sirota's letter. The letter, in pertinent part, states:

On April 11, 1989, we mailed Dr. Rubin a revised Valuation Report following a telephone conversation regarding the funding of the plan. As a result of that conversation, we spent additional time analyzing the investment experience in much greater detail than we customarily do. The additional analysis of investment experience resulted in eliminating any additional contributions for that plan year and formed the basis of my best estimate of future expectations under the plan. Having already done this analysis in such depth to establish my best estimate, I am not permitted to use an alternative actuarial assumption that would not reflect my best estimate.

On April 11, 1989, we mailed to Dr. Rubin the Form 5500 filings which you were copied on. These filings listed only [a] $20,000 contribution of September 1987. Contained in this letter was the warning "Please be certain to carefully review the filings for accuracy and completeness prior to signing the declaration." We also requested that the client call us if he should have any questions. Why weren't we notified at this time of the September 1988 contribution? On April 12, 1989, the client signed the Form 5500 and returned [it] to us on April 19, 1989, without comment.

In January 1990, the corporation engaged the services of another actuarial firm, Consulting Actuaries International, Inc. (the second actuaries), for the purpose of valuing the plan's assets for its year ended June 30, 1990, and to assist it with the Internal Revenue Service's audit of the corporation. The second actuaries, in a letter dated March 13, 1990, informed Revenue Agent Geddes that the average rate of return on the plan's assets was 3.24 percent and that the second actuaries were prepared to certify a revised Schedule B for the plan's year ended June 30, 1988. The second actuaries' letter dated March 13, 1990, in pertinent part, states:

It is our contention that since Section 1.3 of the Plan document specifies a 6% interest rate, it is the intention of the Plan Administrator to pay lump sum distributions based on a 6% interest rate, and it is a reasonable interest rate based upon the actual plan experience, the July 1, 1987 valuation should be based upon that rate.

The September 7, 1988 valuation report prepared by Pension Actuarial Associates, Inc. and then revised on October 5, 1988 showing a minimum required contribution of $56,773 and $60,524 respectively was based upon a 6% interest rate assumption. We have verified those calculations.

I am prepared to certify to a revised Schedule B for the plan year ended June 30, 1988 based upon that actuarial report with trust assets as of July 1, 1987 equal to $421,267. * * *

During August 1992, petitioners' attorney, Zachary S. Minion, requested that the second actuaries prepare an amended

Schedule B for the plan's year ended June 30, 1988. The second actuaries, in a letter dated September 9, 1992, informed Mr. Minion that they could not certify an amended Schedule B for the plan's year ended June 30, 1988. The second actuaries' letter states that

The IRS has informed actuaries that a Schedule B can not be revised once it has been accepted by the IRS. However, pursuant to our letter of March 13, 1990 * * * we have stated that we believe the 1987 Schedule B was prepared incorrectly, and we have enclosed a revised form which we would be prepared to certify to if permitted by the IRS.

The corporation has not filed an amended certified Schedule B for the plan's year ended June 30, 1988.

In the notice of deficiency, respondent determined that the corporation's maximum deductible contribution to the plan for its taxable year ended June 30, 1988, was limited to $19,821. Accordingly, respondent increased petitioners' income resulting from the denial of the corporation's deduction in excess of $19,821.

*Discussion*

The first issue we must decide is whether the corporation's reliance on uncertified, preliminary information supplied to it by its actuaries satisfies the requirements of sections 412(c)(3) and 6059 and the regulatory requirements thereunder. Petitioners bear the burden of proof. Rule 142(a); *Welch v. Helvering,* 290 U.S. 111 (1933).

The plan is a defined benefit plan. Generally, a defined benefit plan provides each participant in the plan with a certain set level of benefits beginning at the participant's retirement. *Vinson & Elkins v. Commissioner,* 99 T.C. 9, 13 (1992), affd. 7 F.3d 1235 (5th Cir. 1993). The amount of the benefits each participant receives is usually determined by a formula described in the plan. The benefits provided by the plan are generally funded by annual contributions from an employer over each participant's preretirement employment period. Secs. 404, 412. An employer is permitted to deduct its contributions to a qualified defined benefit plan. Sec. 404(a)(1). In determining the employer's annual contribution to a defined benefit plan, certain actuarial assumptions must be used in order to ensure adequate funding of the plan. Consequently, the amount an employer is entitled to deduct

under section 404(a) is based, in part, on the actuarial assumptions used in determining the costs of the plan. Such actuarial assumptions must meet the requirements of section 412(c)(3), which provides:

(3) ACTUARIAL MUST BE REASONABLE.—For purposes of this section, all costs, liabilities, rates of interest, and other factors under the plan shall be determined on the basis of actuarial assumptions and methods—
 (A) in the case of—
  (i) a plan other than a multiemployer plan, each of which is reasonable (taking into account the experience of the plan and reasonable expectations) or which, in the aggregate, result in a total contribution equivalent to that which would be determined if each such assumption and method were reasonable, * * *

Section 412(c)(3) was added to the Internal Revenue Code by section 1013(a) of the Employee Retirement Income Security Act of 1974 (ERISA), Pub. L. 93–406, 88 Stat. 914. ERISA section 1033(a), 88 Stat. 947, also added section 6059 to the Code. Section 6059 requires employers and plan administrators to engage an enrolled actuary[2] to prepare and certify an actuarial report (Schedule B)[3] for the pension plan's first year and every third year thereafter. Section 6059 provides as follows:

SEC. 6059. PERIODIC REPORT OF ACTUARY.
 (a) GENERAL RULE.—The actuarial report described in subsection (b) shall be filed by the plan administrator (as defined in section 414(g)) of each defined benefit plan to which section 412 applies, for the first plan year for which section 412 applies to the plan and for each third plan year thereafter (or more frequently if the Secretary determines that more frequent reports are necessary).

The regulations promulgated pursuant to section 6059(b)(5) provide that the following information must be reported on Schedule B:

 (1) The date of the actuarial valuation applicable to the plan year for which the report is filed * * *,
 (2) A description of the funding method and actuarial assumptions used to determine costs under the plan,

---

[2] Sec. 7701(a)(35) defines an enrolled actuary as a person who is enrolled by the Joint Board of the Enrollment of Actuaries established under the Employee Retirement Income Security Act of 1974, Pub. L. 93–406, 88 Stat. 829, 1002.
[3] The actuarial report required by sec. 6059 must be filed by the employer or the plan administrator on Schedule B as an attachment to the annual Return/Report of Employee Benefit Plan. Sec. 301.6059–1(a), Proced. & Admin. Regs.

(3) A certification of the contribution necessary to reduce the accumulated funding deficiency (as defined in section 412(a)) to zero,

(4) A statement by the enrolled actuary signing the report that to the best of the actuary's knowledge the report is complete and accurate,

(5) A statement by the enrolled actuary signing the report that in the actuary's opinion the actuarial assumptions used are in the aggregate (i) reasonably related to the experience under the plan and to reasonable expectations, and (ii) represent the actuary's best estimate of anticipated experience under the plan,

(6) Such other information as may be necessary to fully and fairly disclose the actuarial position of the plan, and

(7) Such other information as may be required by Schedule B or the instructions accompanying the Schedule and the Form 5500 series.

[Sec. 301.6059–1(c)(1) to (7), Proced. & Admin. Regs.]

The legislative history of ERISA sheds light on Congress' intent with regard to operation of sections 412 and 6059:

Since actuarial calculations determine plan costs, the bill includes several basic rules regarding these calculations. Under the bill, plan liabilities must be determined on the basis of actuarial assumptions that, in the aggregate, are reasonable. Your committee recognizes that frequently there is a range of actuarial assumptions which may be appropriate for determining the costs of a defined benefit pension plan, and the choice of the appropriate assumptions is very much a matter of judgment. In this circumstance, an employer may attempt to substitute his judgment for that of his actuary, which may lead to situations where plan costs are not being independently determined by an actuary. Your committee believes that it is inappropriate for an employer to substitute his judgment in these matters for that of a qualified actuary, and it is contemplated that if such a circumstance were to arise an actuary would have to refuse giving his favorable opinion with regard to the plan.

Since the actuarial assumptions used must be reasonable in the aggregate, it is anticipated that, on audit, the Internal Revenue Service will (as presently) require a change of assumptions where they do not meet this standard. * * *

[H. Rept. 93–779 (1974), 1974–3 C.B. 244, 337.]

In summary, employers and plan administrators must engage an enrolled actuary to determine the actuarial assumptions, methods, and factors that are necessary to fund the pension plan. The enrolled actuary must also certify that, to the best of his knowledge, the actuarial assumptions, methods, and factors that were used to determine the pension plan's costs are reasonable in the aggregate and that they represent the actuary's best estimate of anticipated experience under the pension plan. Secs. 412(c)(3), 6059; *Vinson & Elkins v. Commissioner,* 99 T.C. at 20–21; *Wachtell,*

*Lipton, Rosen & Katz v. Commissioner,* T.C. Memo. 1992–392, affd. 26 F.3d 291 (2d Cir. 1994).

In the instant case, the corporation made timely contributions to the plan totaling $56,773 for the corporation's taxable year ended June 30, 1988. Accordingly, on its Federal income tax return for its taxable year ended June 30, 1988, the corporation claimed a $56,773 deduction for such contributions. The Schedule B attached to the Form 5500–R filed for the plan's year ended June 30, 1988, states that the corporation contributed only $20,000 to the plan. The actuaries, which prepared the Schedule B on behalf of the corporation, certified that the corporation's minimum and maximum deductible contribution to the plan for its plan year ended June 30, 1988, was only $19,821. Respondent's notice of deficiency disallowed the difference between the $56,773 deduction the corporation claimed and the $19,821 maximum deductible contribution certified by the actuaries.

Petitioners contend that the corporation is entitled to deduct the $56,773 it claimed on its return because the corporation's reliance on the actuarial valuation attached to the actuaries' September 7, 1988, letter was reasonable and satisfies sections 412(c)(3) and 6059. Petitioners contend such reliance was reasonable because the actuaries' letter was prepared prior to September 15, 1988, the last day that the corporation was permitted to make a deductible contribution to the plan for its year ending June 30, 1988. The actuarial valuation attached to the actuaries' September 7, 1988, letter states that the corporation's minimum deductible contribution to the plan under section 412(b) was $56,773 and that a 6-percent interest rate assumption was used to determine the corporation's minimum deductible contribution to the plan.

Respondent contends that the corporation's deduction is limited to the $19,821 set forth in the plan's certified Schedule B attached to its Form 5500–R. Respondent argues that employers may rely only on a certified Schedule B when claiming a deduction under section 404(a). In other words, respondent contends that the actuaries' letter, dated September 7, 1988, is merely uncertified, "preliminary information" which is not the type of information on which employers are entitled to rely when claiming a deduction under section 404(a). In the instant case, the interest rate assumptions

that the actuaries used in certifying the Schedule B indicate that the corporation's maximum deductible contribution to the plan was $19,821. Consequently, respondent maintains that it was not reasonable for the corporation to rely on the actuarial valuation attached to the actuaries' letter dated September 7, 1988.

We agree with respondent. Section 412(c)(3) provides that the actuarial assumptions used by the enrolled actuary must be reasonable in the aggregate. By requiring an enrolled actuary to file a certified actuarial report on Schedule B of Form 5500–R, section 6059 fulfills an important administrative function: it permits the Commissioner to determine whether the actuarial assumptions used by the plan's enrolled actuary are reasonable in the aggregate. To allow an employer to claim a deduction for contributions to a pension plan on the basis of uncertified, preliminary information supplied to it by an actuary would undermine the purpose behind section 6059, which, as noted above, is to prevent employers from substituting their judgment for that of the qualified actuary.

Moreover, petitioners' contention that it was reasonable for the corporation to rely on the actuarial report attached to the actuaries' letter dated September 7, 1988, is not supported by the record in the instant case. On April 11, 1989, the actuaries certified the Schedule B attached to the plan's Form 5500–R for its year ended June 30, 1988. The Schedule B states that the corporation contributed only $20,000 to the plan during the plan's year ended June 30, 1988. The attachment to Schedule B states that the actuaries used different interest rate assumptions to value the plan's assets for its year ended June 30, 1988, than they had used in prior years. On April 12, 1989, the plan's Form 5500–R was signed, and on April 15, 1989, it was filed along with the Schedule B.

By signing Form 5500–R, petitioners attested to the veracity and accuracy of the information contained in both Form 5500–R and the accompanying Schedule B. Consequently, petitioners not only had the opportunity, but the duty, to review Schedule B before filing it. Moreover, the actuaries, in a letter dated October 16, 1989, notified the corporation that it had exceeded its maximum deductible contribution to the plan for its plan year ended June 30, 1988. On October 18, 1989, the actuaries prepared a Form 5500–R and an accom-

panying Schedule B for the plan's year ended June 30, 1989. The Schedule B states that the corporation contributed $36,773 to the plan during its plan year ended June 30, 1989. On January 29, 1990, petitioners signed the Form 5500–R for that plan year and, shortly thereafter, filed it along with Schedule B. An obvious disparity existed between the amounts the corporation contributed to the plan and the amount of the contributions reported on the plan's Schedules B for such plan years, and petitioners do not appear to have made any inquiry into that disparity until respondent's agent questioned the corporation's deduction on audit. We are not convinced by the record in the instant case that the corporation reasonably relied on the actuarial valuation attached to the actuaries' letter dated September 7, 1988. Consequently, we hold that the corporation's reliance on the uncertified, preliminary information supplied to it by its actuaries fails to satisfy the statutory requirements of sections 412(c)(3) and 6059 and the regulatory requirements thereunder.

Next, we must decide whether the corporation is entitled to revise the actuarial assumptions for the plan's year ended June 30, 1988, by filing an amended Schedule B. Respondent argues that the corporation may not amend its Schedule B. Respondent relies on section 1.404(a)–3(c), Income Tax Regs.,[4] and contends that, once an employer or a plan administrator files a Schedule B, the employer or the plan administrator is not entitled to file an amended Schedule B [5] containing a different set of actuarial assumptions unless the Commissioner determines that the actuarial assumptions set forth on the original Schedule B were not reasonable.[6]

Section 1.404(a)-3(c), Income Tax Regs., provides:

---

[4] Respondent also cites sec. 1.412(b)–1(g), Proposed Income Tax Regs., 47 Fed. Reg. 54098 (Dec. 1, 1982), and Rev. Proc. 85–29, sec. 3.03, 1985–1 C.B. 581, as support for such position.

[5] On brief, respondent states that certain information, such as plan qualifications, financial conditions, and operations, required to be reported on Form 5500 and Schedule B may be amended. See sec. 6058; sec. 301.6058–1(a)(3), Proced. & Admin. Regs.

[6] While petitioners do not directly contend that the actuarial assumptions used by the actuaries on the plan's Schedule B were not reasonable in the aggregate, their arguments raise such a contention by implication. The only evidence in the record that would support such an argument, however, is the second actuaries' letter to Revenue Agent Geddes dated March 13, 1990. We do not find such evidence sufficient to sustain a finding that the actuarial assumptions reported on the plan's Schedule B were not reasonable in the aggregate. Petitioners have the burden of proof. That the instant case was submitted fully stipulated does not affect petitioners' burden to assure that the record contains evidence to sustain that burden. *Borchers v. Commissioner*, 95 T.C. 82 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

The amount of a contribution to a pension or annuity plan that is deductible under section 404(a)(1) or (2) depends upon the methods, factors, and assumptions which are used to compute the costs of the plan and the limitation of section 404(a)(1) which is applied. Since the amount that is deductible for 1 taxable year may affect the amount that is deductible for other taxable years, the methods, factors, and assumptions used in determining costs and the method of determining the limitation which have been used for determining the deduction for a taxable year for which the *return* has been filed shall not be changed for such taxable year, except when the Commissioner determines that the methods, factors, assumptions, or limitations were not proper, or except when a change is necessitated by reason of the use of different methods, factors, assumptions, or limitations for another taxable year. However, different methods, factors, and assumptions, or a different method of determining the limitation, if they are proper, may be used in determining the deduction for a subsequent taxable year. [Emphasis added.]

In the instant case, respondent accepts as reasonable the actuarial assumptions the actuaries used to value the plan's assets for its plan year ended June 30, 1988. Consequently, respondent contends that section 1.404(a)–3(c), Income Tax Regs., prevents the corporation from revising the plan's actuarial assumptions through an amended Schedule B.

Petitioners contend that they have met the requirements of section 1.404(a)–3(c), Income Tax Regs. Petitioners argue that the "return" referred to in section 1.404(a)–3(c), Income Tax Regs., is defined in section 6103(b)(1), which includes the corporation's Federal income tax return.[7] Petitioners argue that, because the corporation claimed a $56,773 deduction on its Federal income tax return, Form 1120S, the return would not be changed. They argue that, because the Form 5500–R is not the return referred to in the regulations, amending Schedule B to "correct" the actuarial assumptions to support the deduction stated on the Form 1120S would not run afoul of the prohibition against change in section 1.404(a)–3(c), Income Tax Regs. We do not agree.

By its own terms, section 6103(b)(1) limits its definition of the term "return". It is defined only "For purposes of this sec-

---

[7] Sec. 6103(b)(1), which concerns the confidentiality and disclosure of return information by Government offices and employees, provides:

SEC. 6103(b). DEFINITIONS.—For purposes of this section—

(1) RETURN.—The term "return" means any tax or information return, declaration of estimated tax, or claim for refund required by, or provided for or permitted under, the provisions of this title which is filed with the Secretary by, on behalf of, or with respect to any person, and any amendment or supplement thereto, including supporting schedules, attachments, or lists which are supplemental to, or part of, the return so filed.

tion". Even if the section 6103(b)(1) definition were used, it would include the Form 5500–R, which is an information return. Consequently, we find no support for petitioners' argument that the return to which section 1.404(a)–3(c), Income Tax Regs., makes reference is the employer's corporate tax return.

Section 1.404(a)–3(c), Income Tax Regs., was promulgated prior to the enactment of ERISA (see T.D. 6203, 1956–2 C.B. 219), at the same time as section 1.404(a)–2, Income Tax Regs.[8] Although it was preempted by ERISA, section 1.404(a)–2, Income Tax Regs., required employers to file an information return reporting much of the same information that must now be reported on the Form 5500 series and Schedule B. We also note that Form 1120S does not require an employer to report the actuarial methods, factors, and assumptions used by its enrolled actuary in determining its pension plan's costs. Consequently, Form 1120S would not be useful to the Commissioner in administering section 404(a). Accordingly, we hold that the "return" referred to in section 1.404(a)–3(c), Income Tax Regs., is the Form 5500 series and the Schedule B attached thereto, not the employer's corporate tax return. See *Martin Fireproofing Profit Sharing Plan & Trust v. Commissioner*, 92 T.C. 1173 (1989) (Form 5500 can be a return for purposes of section 6033).

Finally, petitioners contend that the information submitted on the plan's Schedule B violated ERISA section 103(d)(3), 88 Stat. 846, and, therefore, respondent's acceptance of the actuarial assumptions used by the actuaries on Schedule B was not reasonable. ERISA section 103 provides that employee benefit plans (which include defined benefit plans) covered by title I of ERISA must file an annual report with the Secretary of Labor.[9] ERISA section 103(d)(3) requires the following information to be included in the annual report:

---

[8] Sec. 1.404(a)–2, Income Tax Regs., has subsequently been repealed.

[9] ERISA requires the administrators of employee benefit plans to report on an annual basis detailed financial, actuarial, and other information to the Department of Labor (DOL), the Pension Benefit Guarantee Corporation (PBGC), and the Internal Revenue Service (IRS). ERISA secs. 101(b)(4), 103, 104, 4065, 88 Stat. 840, 841, 847, 1032; Code secs. 6068, 6059. To reduce the duplication of reporting, the DOL, the PBGC, and the IRS have designated the Form 5500 Series (Form 5500) as the consolidated annual report for employee benefit plans. Form 5500 need only be filed with the IRS to satisfy the annual reporting requirements of all three agencies. The IRS then forwards a copy of the report to the DOL and the PBGC.

the normal costs, the accrued liabilities, an identification of benefits not included in the calculation; a statement of the other facts and actuarial assumptions and methods used to determine costs, *and a justification for any change in actuarial assumptions or cost methods;* * * * [Emphasis added.]

The instructions to Schedule B require the following information be attached to Schedule B:

12h. Attach a statement of actuarial assumptions used (if not fully described by item 12), to calculate (i) the figures shown in items 6, 8, 9, 10 (if not fully described by item 11), and (ii) the value of assets shown on line 8b. The statement is to include a summary of the principal eligibility and benefit provisions upon which the valuation was based, an identification of benefits not included in the calculation, *and other facts, such as any change in the actuarial assumptions or cost methods and justifications for any such change.* Include also such other information, if any, needed to fully and fairly disclose the actuarial position of the plan. [Emphasis added.]

In the instant case, the actuaries attached a statement to the plan's Schedule B which states, inter alia, that "the pre-retirement interest assumption was changed to 8%, and the post-retirement interest assumption was changed to 8.25%." The actuaries did not provide a justification for the change in interest rate assumptions from those used in prior plan years.[10] Petitioners contend that, because the actuaries failed to justify their decision to use different interest rate assumptions than those used to value the plan's assets in prior years in violation of ERISA section 103(d)(3), it was an abuse of respondent's discretion to accept the actuarial assumptions reported on the plan's Schedule B as reasonable. Accordingly, petitioners contend that the corporation should be permitted to file an amended Schedule B that would entitle the corporation to claim a $56,773 deduction for its contributions to the plan.

Respondent argues that under section 1.404(a)–3(c), Income Tax Regs., the Commissioner has the authority to determine whether the actuarial assumptions reported on Schedule B are reasonable. In the instant case, respondent determined that the actuarial assumptions reported on the plan's Schedule B were reasonable. Respondent argues that it was not an abuse of discretion to accept the actuarial

---

[10] When valuing the plan's assets for prior plan years, the actuaries had used 6-percent interest rate assumptions.

assumptions reported on the plan's Schedule B as reasonable merely because the actuaries failed to provide a justification for changing the actuarial assumptions they used to value the plan's assets on Schedule B.

We note that the Department of Labor, not the Internal Revenue Service, is charged with the responsibility of enforcing ERISA section 103(d)(3). Section 301.6059–1(c)(7), Proced. & Admin. Regs., however, provides that an actuarial report filed on Schedule B must contain "such other information as may be required by Schedule B or the instructions accompanying the Schedule and the Form 5500 series." As stated above, the instructions to Schedule B required the enrolled actuary to provide a justification for any changes in the actuarial assumptions used to value the pension plan's assets. Consequently, the actuaries should have provided a justification for the decision to use different actuarial assumptions to value the plan's assets for its year ended June 30, 1988. That is not to say, however, that the actuaries' failure to provide a justification prevents the Commissioner from accepting the assumptions as reasonable. Neither the Internal Revenue Code nor the regulations specifically requires the Commissioner, when exercising such discretion, to consider an actuary's justification for his or her decision to use a different set of actuarial assumptions than those used in prior plan years. Indeed, petitioners have not shown that the actuarial assumptions reported on the plan's Schedule B for its plan year ended June 30, 1988, were not reasonable in the aggregate and that they did not represent the actuaries' best estimate of anticipated experience under the plan. See *supra* note 6. Accordingly, we agree with respondent that, under section 1.404(a)–3(c), Income Tax Regs., it was not an abuse of discretion to accept the actuarial assumptions reported on Schedule B as reasonable, without considering the justification for the decision to change the interest rate assumptions from those used in prior years.

We have considered petitioners' other arguments and find them to be without merit.

Based on the foregoing,

*Decision will be entered for respondent.*